# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONI LEE IRWIN, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | No. 19-5109 |
| SECURITY, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

TIMOTHY R. RICE                                                                                April 17, 2020
U.S. MAGISTRATE JUDGE

    Plaintiff Toni Lee Irwin alleges the Administrative Law Judge ("ALJ") erred in denying her application for Supplemental Security Income ("SSI") by: (1) improperly weighing the medical opinions; and (2) failing to weigh nonmedical evidence.[1] Pl. Br. (doc. 14) at 3,6. Because I find the ALJ supported her Residual Functional Capacity (RFC) assessment with substantial evidence and properly considered all administrative and medical opinions and other evidence, I deny Plaintiff's request.[2]

    Irwin's claims turn on the functional effects of her physical impairment, a painful left knee for which she sought a limited course of treatment in the first quarter of 2017. R. at 323–50. The ALJ found Irwin could perform light work with additional postural and mental

---

[1] Irwin consented to my jurisdiction on November 22, 2019 (doc. 10), pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, Local Rule 72.1, and Standing Order, In re Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018). See also Roell v. Withrow, 538 U.S. 580, 584 (2003) (consent to Magistrate Judge jurisdiction can be inferred from failure to object after notice and opportunity).

[2] A claimant's RFC reflects "the most [she] can still do [in a work setting] despite [her] limitations." 20 C.F.R. § 416.945(a).

limitations.[3]  Id. at 17.  The ALJ based her RFC on: (1) the "routine and conservative treatment" Irwin received for her physical impairments; (2) her failure to complete prescribed physical therapy; (3) the inconsistency between her testimony that she used a cane for all ambulation and her ability to move without one at her January 2018 consultative examination; (4) the "somewhat persuasive" opinion from medical consultant Dr. Chankun Chung that limited Irwin to light work with occasional postural limitations; and (5) the "generally persuasive" similar opinion from consulting examiner Dr. Greg Grabon.  Id. at 20–21.

The ALJ reasonably described Irwin's left knee treatment as "routine and conservative." Id.  At her February 2017 emergency room visit, Irwin conceded she had been instructed to follow up on her left knee complaints with an orthopedic specialist, but had been too busy "due to work."  Id. at 324.  She was prescribed only Motrin by emergency room and primary care providers.  Id. at 357, 373.  When she did visit an orthopedic specialist a month later, she reported that her symptoms were relieved by over-the-counter medicines and elevation.  Id. at 333.  She was given a knee brace and prescription for physical therapy.  Id.  After testing positive for cocaine and marijuana, she was denied participation in a pain management program, and failed to attend the prescribed physical therapy in April 2017.  Id. at 349–50, 360.  There is no record of her seeking further treatment for her lower extremity impairment until she visited a new primary care provider in March 2019.  Id. at 526.  At that time, she was again prescribed only Motrin for her pain.  Id. at 530; Lindsey v. Astrue, No. 09-501, 2010 WL 2891489, at *8

---

[3] The ALJ found Irwin could perform light work, including lifting up to 20 pounds and frequently lifting up to 10 pounds. R. at 17.  She could occasionally climb ramps and stairs, stoop, kneel, crouch or crawl, frequently balance, and never climb ladders or be exposed to unprotected heights.  Id.  She found Irwin could only occasionally be exposed to dusts, odors, fumes, and other pulmonary irritants.  Id.

(W.D. Pa. July 21, 2010) (physical therapy and medication constitutes routine and conservative treatment); see also Scouten v. Comm'r Soc. Sec., 722 F. App'x 288, 291 (3d Cir. 2018) (ALJ who discounted severity based on "routine, conservative, and limited treatment" provided substantial evidence); Albright v. Berryhill, No. 17-529, 2018 WL 1123762, at *1 (E.D. Pa. Mar. 1, 2018), appeal dismissed sub nom, Albright v. Comm'r Soc. Sec., No. 18-2030, 2018 WL 5819398 (3d Cir. Sept. 7, 2018) (ALJ properly considered that treatment was "routine and conservative" in discounting claimant's reported symptom severity) (citing Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 118 (3d Cir. 2012); Sturgill v. Colvin, No. 15-1195, 2016 WL 4440345, at *10 (E.D. Pa. Aug. 23, 2016); 20 C.F.R. § 416.929(c)(3).

The ALJ also accurately reported that Irwin failed to complete her prescribed course of physical therapy and appropriately discounted the self-reported severity of her symptoms on that basis. R. at 349; see also S.S.R. 16-3p, 2016 WL 1119029, *8 (S.S.A. Mar. 16, 2016) ("if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record"); Vega v. Comm'r of Soc. Sec., 358 F. App'x 372, 375 (3d Cir. 2009) ("an ALJ may consider a claimant less credible if the individual fails to follow the prescribed treatment plan without good reason").[4]

The ALJ also accurately noted that Irwin's April 2019 testimony about using a cane for a

---

[4] Although Vega was issued before Social Security Administration guidance changed from requiring ALJs to consider a claimant's credibility to requiring ALJs to consider the consistency of a claimant's allegations, its reasoning continues to instruct because the portion of the guidance it relies on has not changed. Compare S.S.R. 96-7p, 1996 WL 374186, *7 (S.S.A. July 2, 1996) with S.S.R. 16-3p, 2016 WL 1119029 at *8.

year and a half was contradicted by the medical records, which showed no prescription for an assistive device and no need for one at her January 2018 consultative examination.[5]  R. at 41, 430.

The ALJ also treated the medical opinions appropriately.  Under the regulations in force at the time of Irwin's application,[6] the ALJ was required to give no "specific evidentiary weight, including controlling weight, to any medical opinion."  20 C.F.R. § 416.920c(a).  Instead, the ALJ was required to weigh "other medical evidence," including functionality opinions from treating physicians, id. § 416.913(a)(3), based on several factors, id. § 416.920c(c)(1)-(c)(5), with a focus on consistency and supportability, id. § 416.920c(a).  Consistency and supportability are the only factors ALJs must address in their written opinions.  Id. § 416.920c(b).

Medical consultant Dr. Chung opined that Irwin was limited to light work with occasional postural limitations.  R. at 68-70.  The ALJ found his opinion "somewhat persuasive" because it was "consistent with the record" except that it limited Irwin's exposure to vibrations, which the ALJ rejected as having no basis in the medical record.  Id. at 21.  She found Dr. Grabon's similar opinion "generally persuasive" because it was consistent with the "no more than minimal findings" on medical scans and the "routine and conservative" treatment for Irwin's physical impairments.  Id.

---

[5]   Irwin was prescribed a cane when she came to the ER complaining of plantar fasciitis in November 2015.  R. at 343.  Her failure to use one at any of the medical visits documented after that time provides substantial evidence to support the ALJ's conclusion that it was unnecessary.

[6]   Irwin filed for SSI benefits on September 14, 2017.  R. at 203.  The revised regulations for treatment of medical source opinions apply to claims filed after March 27, 2017.  20 C.F.R. § 416.927.

As explained above, the ALJ reasonably described Irwin's treatment as "routine and conservative." Id.  She also accurately described the scan findings as "no more than minimal." Id.  Knee x-rays from Irwin's February 2017 emergency room visit revealed only "mild" findings.  Id. at 326, 347.  A month later, hip x-rays showed no findings at all, id. at 338, and a left knee MRI confirmed only "mild" changes, id. at 345–46.  Two years later, knee and hip x-rays confirmed the left knee changes were still "mild" and the hip findings non-existent.  Id. at 520–23.

Dr. Grabon opined that Irwin could only sit, stand, or walk for one hour at a time, although she could perform each activity for a total of up to three hours per day.  Id. at 434.  Irwin argues the ALJ improperly failed to specifically explain why she rejected the one-hour-at-a-time limitation.  Pl. Br. at 4.  She contends the ALJ did not have substantial evidence to support her RFC because the Vocational Expert (VE) testimony she relied upon did not include the sit-stand option this limitation requires.  Id. at 5–6.

Irwin overstates the importance of Dr. Grabon's proposed limitation.  The ALJ described Dr. Grabon's opinion as allowing "light work."  R. at 21.  Light work can include carrying no weight and "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).  "[A] good deal of walking or standing" means a total of approximately six hours, "off and on."  S.S.R. 83-10, 1983 WL 31241, *6 (Jan. 1, 1983) ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday").  Because Dr. Grabon's opinion allowed for a total of up to six hours per day of walking and standing, the ALJ properly described it as allowing light work.  Elliott v. Comm'r of Soc. Sec., 295 F. App'x 507, 508 (3d Cir. 2008) (a claimant who can stand or walk for six hours per day can perform light work).

Further, the ALJ was not required to adopt every limitation included in Dr. Grabon's opinion. Wilkinson v. Comm'r of Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014) ("the ALJ was not required to adopt all of Dr. Ali's opinion solely because she found the opinion as a whole persuasive."). By pointing to the minimal scan findings and routine and conservative treatment, she sufficiently explained why she adopted only most of its limitations. See Dority v. Comm'r Soc. Sec., 621 F. App'x 728, 730–31 (3d Cir. 2015) (ALJ who credited medical opinion after finding live testimony consistent with the overall medical record provided substantial evidence); Bowser v. Barnhart, 84 F. App'x 241, 244 (3d Cir. 2004) (ALJ who found weight of the evidence inconsistent with medical opinion provided substantial evidence).

Because the ALJ properly addressed the medical opinions and accurately and reasonably cited substantial evidence to support her RFC, her opinion permits "meaningful judicial review." Hernandez v. Comm'r of Soc. Sec., 89 F. App'x 771, 773–74 (3d Cir. 2004) ("The Commissioner need not undertake an exhaustive discussion of all the evidence . . . where we can determine that there is substantial evidence supporting the Commissioner's decision").

Irwin also argues the ALJ erred by ignoring and assigning no weight to the third party function report submitted by her friend. Pl. Br. at 6. The ALJ, however, accurately summarized the report. R. at 18, 281–88. She was not required to articulate the weight she gave to it. 20 C.F.R. § 416.920c(d); see also Scouten, 722 F. App'x at 291 (finding no error in failing to assign weight when ALJ discussed third party testimony "in detail" along with medical evidence).

An appropriate Order accompanies this opinion.